# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

LAWRENCE DANGERFIELD,

                     Petitioner,          :     Case No. 1:20-cv-582

     - vs -                                  District Judge Timothy S. Black
                                          Magistrate Judge Michael R. Merz

WARDEN, Southeastern
  Correctional Complex,

                                   :

                   Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Lawrence Dangerfield under 28 U.S.C. § 2254, is before the Court for decision on the merits. Pertinent filings are the Petition (ECF No. 1), the State Court Record (ECF No. 6), the Warden's Return of Writ (ECF No. 7), and Petitioner's Traverse (ECF No. 8). The Magistrate Judge reference in the case has been transferred to the undersigned to help balance the Magistrate Judge workload in the District. Final decision of the case remains with District Judge Black.

**Litigation History**

Petitioner was indicted on March 23, 2015, by a Hamilton County grand jury on one count of aggravated vehicular homicide in violation of Ohio Revised Code § 2903.06(A)(2)(a) (Count 1), one count of vehicular homicide in violation of Ohio Revised Code § 2903.06(A)(3)(a) (Count

2), and one count of failure to stop after an accident in violation of Ohio Revised Code § 4549.02(A) (Count 3). (Indictment, State Court Record, ECF No. 6, Ex. 1).  Lacking success on his motion to suppress, Dangerfield tried the case to a jury, but was convicted on all counts.  Prior to sentencing, the trial court heard and overruled a motion for new trial.  The court merged the vehicular homicide counts under Ohio Revised Code § 2941.25 and sentenced Dangerfield to eight years on the vehicular homicide convictions and three consecutive years on the hit-and-run conviction. *Id.* at Ex. 4.

Dangerfield appealed to the Ohio First District Court of Appeals which affirmed the conviction June 29, 2014 (Judgment Entry, State Court Record, ECF No. 6, Ex. 11).  On further appeal, the Supreme Court of Ohio declined to exercise jurisdiction. *Id.* at Ex. 14.  Raising claims of ineffective assistance of appellate counsel, Dangerfield filed an Application for Reopening under Ohio R. App. P. 26(B) which was denied by the First District February 27, 2020. *Id.* at Ex. 16[1].

Dangerfield filed the instant habeas corpus Petition on July 22, 2020, pleading the following grounds for relief:

> **Ground One:** The photo array was suggestive and tainted the identification testimony of Dennis Medley, thus it was error to deny the motion to suppress.
>
> **Supporting Facts:** The photo array contained 8 photographs of non-white males. Six of the 8 individuals were dark skinned, and only two had light skin. Only two had beards that were full, and 1 of the 2 individuals with a full beard was dark skinned. This unfairly narrowed the witnesses to select Mr. Dangerfield the only individual already known to the witnesses to select Mr. Dangerfield's gray beard, a head covering, and being light skinned. The trial court erred in holding that the photo array was not suggestive.

---

[1] In his Petition Dangerfield claims the 26(B) Application has not yet been decided (ECF No. 1, PageID 3).  The State Court Record (ECF No. 6), however, includes a decision denying that Application on February 27, 2020. *Id.* at Ex. 16.

2

**Ground Two:** Mr. Dangerfield [sic] conviction for aggravated vehicle homicide is not supported by sufficient evidence.

**Supporting Facts:** The State of Ohio did not prove every element of Agravated [sic] Vehicle Homicide beyond a reasonable doubt.
**Ground Three:** Petitioner's Fifth Amendment Right of the U.S. Constitution was violated.

**Ground Three**: Petitioner's Fifth Amendment Right of the U.S. Constitution was violated.

**Supporting Facts:** The trial court nor prosecutor told the jury to disregard the repeated references to Mr. Dangerfield "lawyering up."

**Ground Four:** Petitioner was deprived of his right to effective assistance [sic] trial counsel.

**Supporting Facts:** Trial counsel was deficient in failing to object to, *inter alia*, the trial court's curative institution and to a suggestion of the prosecutor during voir dire that alcohol was involved in this case, where there was no evidence of alcohol consumption.

**Ground Five:** Appellate Counsel was deficient when he failed to raise on direct appeal trial counsel's ineffectiveness in failing to effectively cross-examine and challenge procedure used to attach Petitioner to the offense.

**Supporting Facts:** Officer Jerry Lathery presented the photo array to Mr. Medley in a bundle. Mr. Medley, used the process of elimination and hesitantly choose Petitioner's photo. Mr. Medley testified that he was not 100% certain about his final selection. Trial failed in his duty to cross-examine Officer Jerry Lathery and others thoroughly as to how Mr. Medley later made an in court identification of Petitioner. Had trial counsel thoroughly crossed examined officers, the full suggestive nature of the police tactics would have been exposed.

(Petition, ECF No. 1).

The First District Court of Appeals found the following facts regarding the crime in suit:

Just before 11:00 p.m., Dangerfield was driving his sister's silver BMW sedan north on Reading Road in the Bond Hill neighborhood of Cincinnati. While the posted speed limit was 30 m.p.h.,

3

Dangerfield was traveling at between 59 and 72 m.p.h. His driver's license was suspended at the time.

Denson and two friends had just exited from a Metro bus and were attempting to cross Reading Road. Dangerfield struck Denson, tossing her into the air. The impact was captured on surveillance video from the bus and from a nearby apartment building. Her body was thrown 250 feet. She died within minutes.

Dennis Medley, Jr., the owner of an auto repair shop, was driving south on Reading Road at the same time and observed a heavily damaged silver BMW, streaming coolant from its radiator, driving north. The front windshield was heavily cracked.

Medley observed the driver as the cars passed. Medley called 911 and described the driver as "a black male with a beanie on his head * * * [h]air on his face," and distinctive eyes and nose. Medley subsequently picked Dangerfield's photo out of an eight-image police photo lineup and identified Dangerfield as the driver during trial.

The bumper of the BMW, bearing the front license plate, was torn off of the vehicle by the impact with Denson's body. In response to a radio call which included the make and model of the car, its license number, and a description of the driver as a "Male black with a light-colored head covering, like a beanie-type covering," Cincinnati police officers quickly located the vehicle at 1663 Rose Place, about two miles from where Denson had been killed. Dangerfield lived there with his sister.

Dangerfield and several others were standing in front of the vehicle. The group retreated to the house. Dangerfield was coaxed from the house and taken for questioning. Police took a photo of him showing his wide nose and graying beard. He was wearing a cream-colored kufi, or brimless, rounded cap, and had a cut on the center of his forehead. Dangerfield asked for an attorney and questioning ceased.

Denson's blood was found on the silver BMW in Dangerfield's driveway.

(Judgment Entry, State Court Record, ECF No. 6, Ex. 11, PageID 98-99).

# Analysis

**Ground One: Suggestive Pre-Trial Identification**

In his First Ground for Relief, Petitioner claims a suggestive pre-trial photo array tainted the in-court identification of witness Dennis Medley and he was thereby deprived of his right to due process of law. Respondent defends this Ground for Relief on the merits (Return of Writ, ECF No. 7, PageID 1299-1306). Petitioner recounts motion to suppress and trial testimony at length (Traverse, ECF No. 8, PageID 1327-45). He then claims the First District's decision on this Ground for Relief is an unreasonable application of relevant Supreme Court precedent, particularly *Neil v. Biggers*, 409 U.S. 188 (1972), and *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)(Traverse, ECF No. 8, PageID 1348).

Dangerfield presented this claim to the First District as his first assignment of error and the First District decided it as follows:

> In his first assignment of error, Dangerfield claims that the trial court erred in denying his motion to suppress Medley's photo-lineup identification of Dangerfield as the driver of the BMW. He claims the photo lineup was suggestive and tainted Medley's identification, and that, in denying the motion, the trial court did not consider the state's failure to fully comply with the provisions of R.C. 2933.83 during the photo lineup.
>
> Our review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact if they are supported by competent and credible evidence, but we review de novo the trial court's application of the law to the relevant facts. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. A two-part test is utilized to determine whether an eyewitness identification must be suppressed. See *State v. Neal,* 1st Dist. Hamilton No. C-140667, 2015-Ohio-4705, ¶ 28; see also *Neil v. Biggers,* 409 U.S. 188, 196-197, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). First, the reviewing court must

determine whether the lineup procedure utilized was suggestive and unnecessary. Second, if the lineup is found to be suggestive and unnecessary, the court must determine whether the identification was reliable under the totality of the circumstances. *Neal* at ¶ 28; see *State v. Brand*, 1st Dist. Hamilton No. C-150590, 2016-Ohio-7456, ¶¶ 44-45.

Within a few days of the accident, Medley identified Dangerfield as the driver of the BMW from a photo lineup of eight photos of African-American men shown to him by a blind administrator, an officer not involved in the investigation. Each photo showed an African-American male with a beard and roughly similar features. The other seven photos had been selected from a computer database to match Dangerfield's characteristics. Medley was not told that the suspect's photo was in the lineup. The skin tone of the subjects varied, but the instructions had cautioned that "Photographs may not always depict the true complexion of a person. It may appear lighter or darker in the photograph." The photo of Dangerfield showed him wearing a dark brown or black cap, very similar in shade to his hair color, and much darker than the cap he had worn the night that he struck Denson.

Medley observed the photos for about ten minutes and ultimately picked the photo of Dangerfield. He continued to look at all the remaining photos after seeing Dangerfield. He initialed that photo and then wrote a brief description of his identification: "eyes and face and beard also nose." Medley testified that he had discarded the other photos "for the simple fact [that] none of them had any [similarity to] the wide nose, the eyes, or nothing really clicked in their facial expressions or the face." Medley stated at the suppression hearing that he was "positive" that Dangerfield was the driver.

We agree with the trial court's conclusion that the lineup was not unduly suggestive. See *Neal*, 1st Dist. Hamilton No. C-140667, 2015-Ohio-4705, at ¶ 36. Thus we need not determine whether Medley's identification was reliable under the totality of the circumstances. See *Brand*, 1st Dist. Hamilton No. C-150590, 2016-Ohio-7456, at ¶ 47.

Finally, the blind administrator admitted handing all eight photos to Medley at once, contrary to the admonition in R.C. 2933.83(B) to show a witness the photos sequentially. But noncompliance with R.C. 2933.83(B) alone does not render a pretrial identification procedure per se impermissibly suggestive and does. not warrant suppression of the identification evidence. See *State v. Ruff,* 1st Dist.

Hamilton No. C-110250, 2012-Ohio-1910, ¶ 8; see also *State v. Young*, 2017-Ohio-9028, 101 N.E.3d 1056, ¶ 35 (10th Dist.). The remedy for a failure to comply with R.C. 2933.83 is that "the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification." R.C. 2933.83(C)(3). See *State v. Stevenson*, 2d Dist. Montgomery No. 24821, 2012-Ohio-3396, ¶ 16.

Here, the trial court did not state in its decision overruling the motion to suppress that it had considered noncompliance with R.C. 2933.83(B). But we cannot say that Dangerfield was prejudiced by this omission. The jury heard extensive testimony and cross-examination regarding the photo-lineup identification procedure. And the trial court instructed the jury to consider whether Medley, the single identification witness, had had the opportunity to make a reliable observation, and specified that the jury could take into account the circumstances under which the identification was made, "including [the] photo lineup." This credibility instruction encouraged the jury to assess the value of Medley's photo-identification testimony much as an R.C. 2933.83(C)(3) instruction would have done. See *Young*, 2017-Ohio-9028, 101 N.E.3d 1056, at ¶ 36. Dangerfield was not prejudiced by the court's instruction or by its denial of his motion to suppress. The first assignment of error is overruled.

(Judgment Entry, State Court Record, ECF No. 6, PageID 99-102).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In *Neil, supra*, the Supreme Court held:

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

409 U.S. at 199; *accord, Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). An identification procedure violates a defendant's right to due process if it "was so unnecessarily suggestive as to run the risk of irreparable mistaken identification." *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005). Even if an identification procedure was impermissibly suggestive, the identification is still admissible if it is reliable. *Id.* at 469, 472. For a pre-trial identification procedure to be "'impermissibly suggestive,' the procedure must 'give rise to a very substantial likelihood of irreparable misidentification.'" *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2559 (2018), *quoting Neil v. Biggers,* 409 U.S. 188, 197 (1972).

The Cincinnati police used a number of techniques designed to prevent misidentification. They did not arrange a one-on-one physical confrontation between Medley and Dangerfield on the evening of the offense, nor did they construct a physical lineup where the risk of choosing possible suspects to be in the lineup is subject to the confirmation bias of arresting officers. Instead, they used a computer system to generate photographs to be shown to the witness. They also avoided the confirmation bias[2] problem by using a "blind" administrator, i.e., an officer who does not know which of the photographs being shown is that of the suspected person. Dangerfield argues that the computer could have generated thousands of pictures and it was still a police officer who chose which ones to display (Traverse, ECF No. 8, PageID 1352). However he admits there is no

---

[2] Confirmation bias is the tendency to search for, interpret, favor, and recall information in a way that confirms or supports one's prior beliefs or values. For example, if the officer administering a lineup knows who the suspect is, he may, even unconsciously, suggest the identification to the victim.

evidence to this effect and the assertion that the displaying officer could have intentionally chosen photographs that did not look like Petitioner is contrary to the findings of both the trial and appellate courts that he was a "blind" administrator.

Because the state courts found the photo array was not unduly suggestive they did not analyze the second prong of the *Neil* test, to wit, whether there was a very substantial likelihood of irreparable misidentification. *Sexton, supra*.  As Petitioner himself reminds us "Reliability is the linchpin in determining the admissibility of such evidence."  Traverse, ECF No. 8, PageID 1351, quoting *Manson v. Brathwaite* (1976), 432 U. S . at 114.

Examining the totality of the circumstances, there are numerous other proven facts which support the reliability of Medley's identification.  His estimate of the amount of time he had eye contact with Petitioner is almost certainly overstated, but the ability of individuals to estimate time intervals is notoriously poor.  Aside from that, however, he is an automobile mechanic and immediately identified the vehicle leaving the scene as a damaged silver BMW.  Dangerfield was found with a silver BMW relatively near the accident scene and with an abrasion on his forehead. His DNA was in the car and the victim's blood was on the outside of the car.  The BMW he was with had a cracked windshield and was missing the front bumper; that BMW front bumper with an identifying license plate was found at the scene.  Dangerfield matched the description Medley gave the police at the scene.  Dangerfield points to no evidence that these incriminating facts are mere coincidence.

The question of whether or not the State complied with Ohio Revised Code § 2933.83 in conducting the photo array is not before this Court.  No Supreme Court precedent commands conformity with those procedures and violation of a state procedural rule does not of itself deny a defendant due process.  "A state cannot be said to have a federal due process obligation to follow

all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993).

Thus there is no basis for this Court to find that the state courts' application of *Neil* and *Manson* is unreasonable or based on an unreasonable determination of the facts.  Ground One should be dismissed.

**Ground Two:  Insufficient Evidence of Aggravated Vehicular Homicide**

In his Second Ground for Relief, Petitioner asserts his conviction for aggravated vehicular homicide is not supported by sufficient evidence.

In his appeal to the First District, Dangerfield asserted that the element not proven by sufficient evidence was the *mens rea* element, to wit, that aggravated vehicular homicide requires proof of recklessness and the State had only proven negligence (Appellant's Brief, State Court Record, ECF No. 6, Ex. 8, PageID 58-61).

The First District decided this claim as follows:

> Dangerfield next argues that his conviction for aggravated vehicular homicide was not supported by sufficient evidence. R.C. 2903.06(A)(2)(a) provides that no person, while operating a motor vehicle, shall cause the death of another "recklessly." Dangerfield contends that his conduct was negligent at worst and that, as a matter of law, excessive speed alone was insufficient to prove recklessness.
>
> The test for the sufficiency of the evidence required to sustain a conviction is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *State v. Waddy,* 63 Ohio St.3d 424,430, 588 N.E.2d 819 (1992). A "driver's grossly excessive speed, particularly when combined with other factors, will * * * support a finding of recklessness." *State v. Moore,* 2d Dist. Montgomery No. 22904, 2009-Ohio-3766, ¶ 8; see *State v. Napier,* 1st Dist. Hamilton No. C-970383, 1998 WL

542715, *4 (Aug. 28, 1998); see also *State v. Nguyen*, 10th Dist. Franklin No. 02AP-1138, 2003-Ohio-2328, ¶ 37 (holding that excessive speeding alone can be sufficient to demonstrate recklessness).

The state's accident reconstructionist testified that Dangerfield was traveling between 59 and 72 m.p.h. when he struck and killed Denson-twice the posted speed limit. He struck Denson with force sufficient to cause major damage to his vehicle and to throw her 250 feet down Reading Road. Dangerfield struck Denson while passing a Metro bus just leaving a bus stop in a residential neighborhood. It was dark. Denson's companions did not hear any sounds indicating that Dangerfield had attempted to brake before hitting Denson.

Dangerfield's excessive speed, when combined with the circumstances surrounding the incident, showed a "heedless indifference to the consequences" of and disregard for a known risk that his conduct was likely to cause. *Napier* at * 4. Thus the record reflects substantial, credible evidence from which the jury could have reasonably concluded that the state had proved all elements of aggravated vehicular homicide beyond a reasonable doubt, including that Dangerfield had killed Denson recklessly. See *Waddy*, 63 Ohio St.3d at 430, 588 N.E.2d 819; see also *Moore* at ¶ 8. The second assignment of error is overruled.

(Judgment Entry, State Court Record, ECF No. 6, PageID 102-03).

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*) This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus

case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to

the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*,

541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc);

*Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based

upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656

(6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of judicial
> deference. First, on direct appeal, "it is the responsibility of the jury
> -- not the court -- to decide what conclusions should be drawn from
> evidence admitted at trial. A reviewing court may set aside the jury's
> verdict on the ground of insufficient evidence only if no rational trier
> of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.
> S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam).
> And second, on habeas review, "a federal court may not overturn a
> state court decision rejecting a sufficiency of the evidence challenge
> simply because the federal court disagrees with the state court. The
> federal court instead may do so only if the state court decision was
> 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S.
> ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43

(2012) (per curiam). The federal courts do not make credibility determinations in reviewing

sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Petitioner argues that the First District's decision on this claim is an unreasonable

application of *Jackson* (Traverse, ECF No. 8, PageID 1354). Criticizing that court's reliance on

*State v. Nguyen*, 2003-0hio-2328, (Ohio App. 10th Dist. 2003), Dangerfield writes:

> The problem is that no appellate court in Ohio has applied that
> holding, not even the district it was cited from. There is not one case
> in the State of Ohio where speed alone caused the death of another.
> There has been in all the cases of vehicle homicides other factors
> contributing to the death of an individual in every vehicle homicide
> cases in Ohio.

13

(Traverse, ECF No. 8, PageID 1354). *Nguyen* does indeed stand for the proposition that, while speeding alone is insufficient to show recklessness, it can combine with other factors to support a jury verdict of recklessness. The instant case does appear to be the only reported opinion that cites *Nguyen*. That alone, however, is not enough to overturn the First District's decision.

First of all, the court also cited *State v. Moore,* 2009-Ohio-3766, ¶ 8 (Ohio App. 2d Dist. 2009), and *State v. Napier,* 1st Dist. Hamilton No. C-970383, 1998 WL 542715, *4 (Aug. 28, 1998). In *Moore* the Montgomery County Court of Appeals held that while speeding alone was insufficient to support a finding of recklessness, it could be combined with other factors shown by the evidence to increase the risk of death. In *Napier* the First District itself had found speed combined with other risk factors was sufficient. Conversely, Dangerfield has presented no Ohio case authority holding that speeding twice the speed limit at night in a residential area is insufficient.

Secondly, recklessness is a mixed question of fact and law which a properly instructed jury is empowered to decide in Ohio. The jury here was properly instructed on the element of recklessness and found it was present. As noted, Dangerfield has presented no controlling Ohio authority finding a verdict unreasonable upon facts such as those presented to this jury.

Third, the questions of what facts must be presented to an Ohio jury to sustain a finding of recklessness is a question of Ohio law on which this Court is bound by the decisions of state courts, including those in the case in suit. *Bradshaw v. Richey*, 546 U.S. 74 (2005).

The First District's application of *Jackson* is not objectively unreasonable. Therefore Dangerfield's Second Ground for Relief should be dismissed.

**Ground Three:  Comment on Defendant's Silence**

In his Third Ground for Relief, Petitioner asserts he was denied due process of law[3] when a police officer commented on his pre-*Miranda* warning silence by saying he had "lawyered up."

Respondent asserts Dangerfield has procedurally defaulted this claim by failing to present it to the state courts as a federal constitutional claim and by failing to lodge a contemporaneous objection (Return, ECF No. 7, PageID 1291-98).  Petitioner responds that this claim was presented in his motion for new trial, in his appeal from denial of the new trial motion, and on further appeal to the Supreme Court of Ohio (Traverse, ECF No. 8, PageID 1357-59).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6ᵗʰ Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'"  *Boyle v. Million*, 201 F.3d 711, 716 (6ᵗʰ Cir. 2000), quoting *Gravley v.*

---

[3] Petitioner refers throughout this claim to the Fifth Amendment.  Because it is a state conviction at issue in this case, it is the Fourteenth Amendment Due Process Clause that is at issue, not the Fifth.

*Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009).  This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004).  "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance."  *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)].  The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine.  See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .

16

> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).   A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error.  *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

In his Motion for New Trial of December 22, 2017, Dangerfield complained that Officer Halusek's comment that Petitioner had "lawyered up" so that there was no police interview deprived him of his rights under the "United States Constitution and the Ohio Constitution." (Motion, State Court Record, ECF No. 6, Ex. 5, PageID 40).  Recognizing that that motion was filed outside the time allowed by Ohio R. Crim. P. 33 for new trial motions, Petitioner sought to cure that difficulty by moving for retroactive permission to file the new trial motion. *Id.* at Ex. 6. The motion was overruled.  On appeal Dangerfield presented as his Fourth Assignment of Error the failure to grant a new trial on the because "[t]he jury was never definitively told to disregard the repeated [two] references to Mr. Dangerfield['s] 'lawyering up.'" (Appellant's Brief, State Court Record, ECF No. 6, Ex. 8, PageID 62).

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must

be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991).

The Magistrate Judge concludes Respondent's first procedural default argument – that this claim was not fairly presented to the state courts as a federal constitutional claim – is without merit. The new trial motion made an express claim under the United States Constitution.  Petitioner did the same thing on appeal and relied on *State v. Leach*, 102 Ohio St.3d 135 (2004).  While *Leach* is an Ohio Supreme Court case, it decided the federal constitutional question presented by reliance on federal precedent, particularly *Doyle v. Ohio,* 426 U.S. 610 (1976).  Under these circumstances, the issue was fairly presented to the First District as a federal constitutional claim.

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like factual situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts well within the mainstream of constitutional litigation.

*Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987); *accord*, *Whiting v. Birt*, 395 F.3d 602 (6th Cir. 2005); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000).

Petitioner's other alleged procedural default on this claim was the failure of his trial attorney to make a contemporaneous objection to the "lawyered up" comments.

18

Dangerfield next argues that the trial court erred in failing to grant his motion for a new trial, made out of time, on grounds that the jury was never definitely told to disregard an investigating police officer's references at trial to Dangerfield getting "lawyered up" and not giving a statement to police. Dangerfield did not contemporaneously object to the references or to the trial court's curative instruction given to the jury before closing argument.

While Dangerfield cites to *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 38, holding that "the admission of the defendant's pre-arrest, pre-*Miranda* silence was clearly prejudicial," on appeal, he argues only that the curative instruction as given, that "every individual has the right to remain silent at any time [and] the fact that there was no statement given [by Dangerfield] is not to be inferred by you as probative of anything," failed to attenuate adequately the impact of the comments.

Under Crim.R. 33(A)(2), a new trial may be granted when the misconduct of a state's witness materially affects the defendant's substantial rights. *See State v. Finnell*, 2018-Ohio-564, 106 N.E.3d 285, ¶ 3 (1st Dist.). We review the trial court's ruling on the motion only foj an abuse of its discretion. See *State v. Seal*, 2017-Ohio-116, 75 N.E.3d 1035, ¶ 9 (4th Dist.).

Dangerfield's reliance on *Leach* is misplaced. The record is silent as to whether Dangerfield was under arrest or had been informed of his right to remain silent at the time that he "lawyered up." Moreover, the trial court's curative instruction directly addressed Dangerfield's right to silence and the inappropriateness of inquiry about it-the crux of any constitutional claim. The trial court's decision to limit the impact of the "lawyered up" comments with a curative instruction was supported by a sound reasoning process and thus does not demonstrate an abuse of its discretion. See *AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990); see also *Seal* at ¶ 9. The fourth assignment of error is overruled.

(Judgment Entry, State Court Record, ECF No. 6, Ex. 11, PageID 104-05).

Although Ohio has a relevant procedural rule requiring contemporaneous objection to trial court error, the First District did not enforce that rule against Dangerfield by limiting its review to plain error. Instead it found Judge Hendon's curative instruction, apparently given *sua sponte*, to have cured any error. Respondent's procedural default defense is unavailing.

In the alternative, defending the First District's decision on the merits, Respondent cites *Jones v. Bagley,* 696 F.3d 475 (6th Cir. 2012), a capital habeas corpus case in which the Sixth Circuit upheld this Court's decision that a curative instruction could overcome error of the sort relied on here. *Id.* at 485.  On the merits, Dangerfield argues "[t]he curative instruction given by the trial court failed to adequatley [sic] address the impact of such testimony," but makes no argument as to why that is so (Traverse, ECF No. 8, PageID 1358).  Instead he argues that the "paucity of evidence" against him makes the instruction insufficient. *Id.* at 1359.  How then does Dangerfield account for the presence of the bumper of his car with the deceased body or the presence of the deceased's blood on his car?

Petitioner's Third Ground for Relief is without merit and should be dismissed.

**Ground Four:  Ineffective Assistance of Trial Counsel**

In his Fourth Ground for Relief, petitioner asserts he received ineffective assistance of trial counsel in that his trial attorney failed to object to the curative instruction and to a suggestion of the prosecutor during *voir dire* that alcohol was involved in this case, where there was no evidence of alcohol consumption.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the

20

> defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694.  See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland,* 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

Dangerfield raised his ineffective assistance of trial counsel claim as his Fifth Assignment of Error on direct appeal and the First District decided it as follows:

> In his final assignment of error, Dangerfield argues that his trial counsel was ineffective for failing to object to the "lawyered up" comments and the trial court's curative instruction, to the state's suggestion in *voir dire* that alcohol was involved in the case, and to the nonsequential presentation of the photo array to Medley.

> Judicial scrutiny of trial counsel's performance must be highly deferential; this court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus. A reviewing court will not second-guess decisions made by trial counsel to pursue one course of defense over another. *See State v. Mason,* 82 Ohio St.3d 144, 157-158, 1998-Ohio-370, 694 N.E.2d 932 (1998).

> Here, Dangerfield's experienced trial counsel had a clear strategy, expressed in opening argument, to contest only that Dangerfield was the driver of the BMW that struck and killed Denson. The critical step in that strategy was to discredit the testimony of Medley, the state's identification witness. Counsel effectively highlighted

22

inconsistencies in Medley's testimony and in the photo-lineup procedures.

None of counsel's alleged failures to object to the "lawyered up" comments or instructions undermined that strategy or were so egregious as to deny Dangerfield a reliable and fair proceeding. This is particularly so in light of counsel's statement in open argument that "it's not my client's job to present alternative persons that could have been driving that night. He solely said, I don't want to talk to you, gentlemen, I'm going to invoke my Fifth Amendment right and ask for an attorney, and that's where we're at."

The mention of alcohol use in *voir dire* was minimal and did not affect the fundamental fairness of the trial. Finally, in light of our overruling of the first assignment of error, any failure to object to the nonsequential presentation of the photos did not amount to deficient performance, much less fundamental unfairness towards Dangerfield.

We hold that there were no acts or omissions by trial counsel that deprived Dangerfield of a substantive or procedural right, or that rendered the trial fundamentally unfair. *See Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The fifth assignment of error is overruled.

(Judgment Entry, State Court Record, ECF No. 6, Ex. 11, PageID 105-06).

In his presentation of his ineffective assistance of trial counsel claim in Ground Four, Dangerfield narrows it from the four sub-claims made in the First District to the two quoted above.

As to the curative instruction, Dangerfield only suggests that it should have been "more thorough" and was "boilerplate."  He makes no suggestion what a more thorough instruction would have been or how it would have been justified by Ohio law.  Nor does he comment on the fact that his own counsel mentioned in opening statement that he had, completely appropriately, invoked his Fifth Amendment right to remain silent and consult an attorney, admitting that Dangerfield had "lawyered up" and invoked his undoubted right to remain silent.  Having done so, he risked that the jury would have seen him as speaking out of both sides of his mouth had he objected.

Regarding the mention of alcohol by the prosecutor in opening, Dangerfield offers no

23

rebuttal to the First District's finding that the mention was "minimal."

The First District applied the correct federal standard from *Strickland* in assessing this claim and its application of *Strickland* is not objectively unreasonable.  Dangerfield's Fourth Ground for Relief should therefore be dismissed.

**Ground Five:  Ineffective Assistance of Appellate Counsel**

In his Fifth Ground for Relief, Petitioner asserts he received ineffective assistance of appellate counsel for not claiming trial counsel was ineffective "in failing to effectively cross-examine and challenge procedure used to attach Petitioner to the offense."

Dangerfield presented this claim to the First District in his Application for Reopening and that court decided the issues as follows:

> In his application, Dangerfield contends that his appellate counsel was ineffective in not assigning as error his trial counsel's ineffectiveness in failing to challenge the reliability of the nonsequential photo lineup used to identify him as the driver of the car that had killed the victim, by "fully show[ing]" the "unduly suggestive" nature of that identification procedure through "cross-exam[ination] and impeach[ment]" of the police officers who had conducted the procedure in contravention of R.C. 2933.83. But appellate counsel submitted an assignment of error challenging the overruling of the motion to suppress the identification and argued in support of that assignment of error that Dangerfield had been prejudiced by the trial court's failure, in determining the reliability of the identification, to consider noncompliance with R.C. 2933.83.
>
> In overruling the assignment of error, we concluded that Dangerfield had not been demonstrably prejudiced by the trial court's omission, when "[t]he jury [had] heard extensive testimony and cross-examination regarding the photo-lineup identification procedure," and the trial court had delivered a "credibility instruction" that, "much as an R.C. 2933.83(C)(3) instruction would have done," "encouraged the jury to assess the value of [the eyewitness's] photo-identification testimony." Therefore, the proposed assignment of

24

> error, challenging trial counsel's effectiveness concerning the
> identification procedure, would have offered no prospect for success
> had appellate counsel presented it in the appeal.

(Entry, State Court Record, ECF No. 6, Ex. 16, PageID 259-60).

Ineffective assistance of appellate counsel claims are evaluated on the same basis as trial counsel claims, that is, under the *Strickland* standard. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*., *citing Wilson.*

The First District applied the Strickland standard and decided that the proposed assignment of error would have had no merit. It simply cannot be ineffective assistance of appellate counsel to fail to raise a claim that the court says it would have rejected. Ground Five for Relief should therefore be dismissed.

**Conclusion**

On the basis of the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court

certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.


February 19, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #